UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| MORROW ENERGY, LLC § | | |
|   *Plaintiff,* § | | |
| § | | |
| v. § | | Case No. MO:24-CV-00147-DC |
| § | | |
| GRAYCOR INDUSTRIAL § | | |
| CONSTRUCTORS, INC., § | | |
|   *Defendant.* § | | |

## MORROW'S FIRST AMENDED COMPLAINT

Plaintiff Morrow Energy, LLC ("Morrow") files this its First Amended Complaint complaining of Graycor Industrial Constructors, Inc. ("Graycor"), and for causes of action would show the Court as follows:

## PARTIES

1. Plaintiff Morrow is a Texas limited liability company organized and formed under the laws of the State of Texas with its principal place of business in Midland, Midland County, Texas.

2. Defendant Graycor is an Illinois corporation with offices in Houston, Harris County, Texas. Graycor can be served through its counsel of record, Mr. Harper Estes, Lynch, Chappell & Alsup, P.C., 300 N. Marienfeld, Suite 700, Midland, Texas 79701, and Ms. Tina Bird, Thompson & Coburn, LLP, 55 East Monroe St., 37th Floor, Chicago, Illinois 60603.

## JURISDICTION AND VENUE

3. On July 1, 2024, this action was removed by Defendant Graycor from the 142nd District Court of Midland County, Texas to this Court. The Court has original jurisdiction pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)(4). Venue is proper in this Court

because the parties agreed, or that all or a substantial part of the events or omissions giving rise to Morrow's claims occurred within the Western District of Texas and the Midland/Odessa Division.

## FACTS

5. Morrow was retained as general contractor by its client Detroit Edison Energy ("DTE") under Contract No. 36C25220C02 I 7, for the Riverview Energy Systems Renewable Natural Gas Facility Project, located at 20000 Grange Road, Riverview, Michigan 48193, under PO No. 1013313 (the "Project").

6. To fulfill its obligations to DTE, Morrow contracted with Graycor to perform certain work on a cost-plus basis. The work performed by Graycor was governed by a Master Services Agreement (the "MSA") between Morrow and Graycor, as "CONTRACTOR," effective January 25, 2023. A copy of the MSA is attached hereto as Exhibit 1 and incorporated herein by reference.

7. At the conclusion of the Project, in late January 2024, Graycor sent a final invoice, Invoice number 220284-20 dated 2/29/24. This invoice billed Morrow for the final labor performed for "**Payweeks 1/17/24 Through Completion**" (the "Final Invoice"). The Final Invoice showed a final contract value of $10,724,197.96 as the completed project price. It is attached hereto as Exhibit 2 and incorporated herein by reference. The Final Invoice showed the amount Graycor expected to be paid for work through project completion. Graycor has issued no subsequent invoice for any *new* work, nor did it do any work on the Project after February 29, 2024. Beginning in February, and continuing through March 8th, however, Morrow and Graycor were engaged in negotiations over disputed charges across several prior invoices, including the Final Invoice.

8. By Morrow's calculation, Graycor had overcharged Morrow for its services. A

substantial portion of these overcharges were related to the calculation of supervisory and management support time by an amount exceeding $1 million. The dispute arose over the meaning of "self-performed labor" and "direct" labor, in regard to how Graycor calculated and charged for its services. More specifically, these disputed overcharges applied not only to the Final Invoice, but to all prior Invoices - 1 through 20.

9. Morrow now seeks to recover, with credits where appropriate, all amounts improperly charged across these invoices.

10. As a result, the disputed charges for craft labor and supervisory labor were audited pursuant to Section 26 of the MSA by Arnie & Company for a period from late March through the end of April. The audit continued until Morrow had received enough information to confirm at least $929,000 in overcharges for supervisory labor cost. To Morrow's satisfaction, the audit confirmed that the supervisory labor overcharges were invoiced on a majority of the invoices prior to, and including the Final Invoice. The audit also confirmed that the overcharges went all the way back to the beginning of the Project.

11. Morrow's discussion with Graycor about a resolution to the overcharge issue had begun before the audit and before the amount of overcharge had been more accurately quantified for Morrow. Those discussions resulted in Graycor making a firm, pre-audit offer on March 8th to provide a credit to Morrow in the amount of $500,000 to its Final Invoice. That offer letter is attached hereto as Exhibit 3 and incorporated by reference. Graycor's offer letter specifically states that the offer is made "…to settle of (sic) all disputed costs on the Riverview RNG project". Furthermore, this Final Invoice was titled by Graycor as "Invoice 220284-20 Labor Final.pdf".

12. Graycor's offer had no stated time limit on acceptance. As allowed under Section 26 of the MSA, and recognized in Exhibit 3, Graycor knew that Morrow planned to audit the

3

invoice charges to determine if the offer was a reasonable sum to settle all disputed charges through completion of the project. Even though the audit indicated that the overcharge was at least $929,000, Morrow elected to accept the $500,000 offer to avoid an outcome like this lawsuit. As a result, Morrow notified Graycor of its decision to accept the offer on May 1st. A copy of the letter accepting Graycor's offer is attached hereto as Exhibit 4 and incorporated by reference herein.

13. Morrow believed that the parties reached a full and complete compromise in which Morrow and Graycor agreed that Graycor would provide the $500,000 credit on its final invoice, and Morrow would make a final payment of $3.148 million in full and final satisfaction of all sums owed Graycor for work performed under the MSA on the Project. On May 9th, Morrow tendered a check in that sum for that express purpose. By doing so, Morrow fully performed its obligations under the settlement. A copy of that letter and the check are attached hereto as Exhibit 5 and incorporated by reference therein.

14. Morrow's tender of the final payment of $3.1 million contained a restrictive endorsement clearly delineating that the payment was the final payment consistent with the offer by Graycor to "settle all disputed costs" on the Project. The endorsement read:

"Full and Final Payment."

15. Graycor accepted the certified mail constituting the acceptance of the Graycor offer, together with the included check on May 13th, but nevertheless purported to reject the Morrow's acceptance of the settlement by a letter sent by Graycor dated May 20th. Graycor did not return the Morrow check. Graycor has held the $3.1 million as payment from Morrow, but gave no credit for receipt of same in its improper demands for payment to Morrow, DTE and the City of Riverview, Michigan.

16. In an email on May 20, 2024, attached hereto as Exhibit 6 and incorporated herein by reference, Graycor advised Morrow of the rejection of Morrow's acceptance of the Graycor settlement offer, and Graycor's breach of its agreement, but suggested that Graycor had the unilateral right to force Morrow to accept $500,000 as a credit in a partial offset of the belated, fraudulent "final reconciliation invoice" – Invoice 21, that added approximately $1.1 million in claimed costs to the previous contract total on the true Final Invoice attached hereto as Exhibit 2.

17. Thus, Graycor submitted another "final" invoice for approximately $1.1 million for the Project. Despite Graycor's offer to settle all disputed costs on the Project, Graycor attempted to reject Morrow's acceptance, and instead tendered the made-up invoice going back to the beginning of the Project. According to Graycor, it was only upon Morrow's acceptance of the belated, fictitious invoice that Graycor would agree to the previously offered $500,000 credit. In other words, Graycor expected Morrow to pay the full $900,000 plus in overcharges and an additional $600,000 related to fictitious charges for which Graycor had never previously timely submitted any invoices or backup supporting same.

18. "Invoice 21" submitted by Graycor is untimely. It contains improper charges, and appears to have been fraudulently created for the specific purpose of deceiving Morrow. It is clear that "Invoice 21" was created long after the work was concluded on the Project, and only after receipt of Morrow's final payment. Moreover, "Invoice 21" was not submitted in the usual form and content of the twenty prior Graycor invoices. It also failed to meet the requirement of Section 5 of the Morrow's contract with Graycor that requires the invoice to be "…correct and submitted in a timely manner." Since the improper late charges relate or pertain to prior time periods that were already covered by the previous invoices, Invoice 21 was presented with Graycor's knowledge that the charges then included were neither timely, nor correct.

19. In fact, pursuant to its contract with Morrow, Graycor was required to timely keep and maintain documentation for the work it performed, identifying the work it performed in the construction of the facilities. This was to enable future operations, maintenance, root-cause analysis, repair, and transferability to subsequent owners by the end user, DTE. By failing to provide such turnover documentation for the Project, Graycor failed to comply with its contractual requirements. It did not create, maintain or deliver important turnover documentation for a substantial part of the work that it performed, despite being contractually obligated to do so. This includes Graycor's failure to provide redline drawings, coating reports, heat maps, paint maps, weld maps, hydro maps, and torque logs. While Material Test Reports were provided in connection with some of the work performed, they provide little benefit when no documentation is provided to show where such components were installed. Essentially, Graycor's failure to provide the required turnover documentation is a pervasive error that cannot be easily remedied now that the work has been completed.

20. Finally, prior to final payment, Graycor made direct contact with Morrow's client, DTE, without Morrow's consent or knowledge. Such communications are in direct violation of the MSA, which specifically prohibit direct communications to the owner, and instead require all communications to flow through Morrow as general contractor. Graycor's unauthorized contact has interfered with Morrow's contractual relationship with DTE and contributed to confusion and reputational harm. A copy of Morrow's improper communication is attached as Exhibit 7.

21. Morrow rejected the belated "Invoice 21" and pointed out that pursuant to the parties' prior agreement, no additional funds were owed to Graycor under its subcontract with Morrow. Graycor then claimed it was owed approximately $4.2 million.

22. Subsequently, in a letter dated May 20, 2024 to Morrow's customer, DTE and to

the City of Riverview (DTE's customer), Graycor apparently reneged even on the original credit and now claims to be owed $4.7 million, despite holding Morrow's check for $3.1 million. See Exhibit 7 attached hereto and incorporated herein by reference.

23. These facts necessitated the filing of this action by Morrow.

## CAUSES OF ACTION

24. The preceding paragraphs are hereby incorporated by reference into each paragraph below.

### A. Request for Declaratory Judgment

25. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202. Morrow seeks a declaratory judgment from this Court to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations as a person interested under a contract.

26. Specifically, Morrow seeks a declaration of the following:

   i. that Graycor agreed to accept Morrow's payment of $3.1 million, in return for providing a $500,000 credit to Morrow;

   ii. that Graycor reneged upon that agreement;

   iii. that Morrow is entitled to at least $900,000.00 in credits due to overcharges by Graycor;

   iv. that Graycor's "Invoice 21" was fraudulent, untimely, unsupported by proper back up documentation, and not payable;

   v. that Invoice 20 submitted by Graycor was the final invoice properly payable by Morrow for the DTE project;

   vi. that the total amount owed by Morrow to Graycor after consideration of all properly submitted and payable invoices and all credits for overcharges is no greater than $2.749 million;

   vii. that neither Morrow, nor its customer DTE, or its customer, the City of Riverview, owe any further sums, beyond the $2,748.580.42

7

     owed to Graycor for work performed on the Project; and

  viii. that Morrow is entitled to its reasonable and necessary attorney's fees incurred in obtaining this relief and in accordance with the provisions of Section 17 of the MSA (Exhibit 1).

**B. Breach of Contract Against Graycor – Failure to Provide Required Documentation**

  27. Pursuant to the MSA, Graycor contractually agreed to provide proper and complete documentation for the work it performed on the Project. Despite repeated demand by Morrow, Graycor has failed to provide the required turnover documentation and is now incapable of doing so, thereby subjecting Morrow to potential liability.

  28. As a result of Graycor's breach, Morrow has suffered damages and will likely continue to suffer damages in the future for which it now sues.

**C. Breach of Contract Against Graycor – Improper Communications**

  29. After offering a compromise to Morrow which Morrow accepted, and the Graycor reneged upon, Graycor then undertook to contact DTE and asserted that it was owed over $4.7 million by Morrow to DTE.

 Morrow's contract with Graycor, however, provides, in pertinent part:

> CONTRACTOR shall NOT contact MORROW customers, clients or their representatives that CONTRACTOR worked for under MORROW during the term of CONTRACTOR'S work with MORROW and for ONE (1) YEAR following the conclusion of this Agreement. CONTRACTOR further agrees that he, his agents, employees, assigns or third parties within CONTRACTOR'S control or influence, shall NOT work for or circumvent business of any Client or Customer of MORROW or their representatives, agents or assigns for ONE (1) YEAR following the conclusion of this Agreement.

Exhibit 1, paragraph 28.

  30. On May 20, 2024, Graycor corresponded with Morrow's client, DTE, and falsely claimed that it was owed $4,761,587.30 despite the fact it had already agreed to and accepted a

8

compromise of $3.1 million dollars with Morrow. *See* Exhibit 3. During those communications, Graycor also did not disclose that Morrow had, in fact, tendered $3,148,850.00, which Graycor refused to accept. Graycor's assertion to DTE of additional sums owed constitutes a breach by Graycor of the MSA with Morrow. Furthermore, it casts Morrow, as the general contractor, in a poor light with its customer, and further casts DTE in a poor light with its client, the City of Riverview, Michigan – all based on a false premise perpetuated by Graycor. Graycor's contact with DTE breached the MSA and constitutes an intentional, non-privileged and intended interference with the contract between Morrow and DTE. Morrow has been damaged by this interference. As a proximate result of Graycor's communication, DTE informed Morrow that DTE would not release any part of the more than $3 million amount that DTE holds as the final contract payment owed to Morrow. By reneging on the settlement offer with Morrow and threatening DTE with a possible lien, which it is barred from filing, Graycor has prevented Morrow from presenting the $3.1 million settlement offer which is necessary to secure the release of the retained funds owed by DTE to Morrow.

31. Morrow performed fully its contractual obligations under the contract by paying in the agreed to sum to Graycor – which Graycor subsequently refused.

32. Graycor's breach of the Contract and intentional interference in the rights and obligations of Morrow and DTE under their contract has caused and will cause Morrow financial injury for which Morrow now sues. Such damage includes but is not limited to the interest on the funds owed Morrow that DTE has retained after May 20, 2024 because Morrow cannot present the aforementioned settlement documents from the dispute with Graycor.

### D. Tortious Interference

33. Morrow has a valid and enforceable contract with DTE.

34. Graycor is a third party to the contract between Morrow and DTE.

35. No justification or excuse exists for Graycor to have intentionally interfered with the contract between Morrow and DTE.

36. Graycor's improper and deliberate actions of communicating with DTE concerning the status of the monies owed between Graycor and Morrow was done with the specific intent to interfere with Morrow's contractual relationship and performance of obligations under the contract with DTE. Graycor has willfully and intentionally interfered with this contract and has caused DTE not to pay Morrow sums, which are presently due and owing.

37. As a proximate result of this Graycor's communications to DTE, Morrow has been damaged and will continue to suffer damage. Morrow therefore seeks damages in excess of the minimum jurisdictional limits of this Court. Morrow's damages include actual damages, consequential damages, damages for loss of reputation and loss of credit.

### Conditions Precedent

38. All conditions precedent have been performed or have occurred.

### Attorney's Fees and Costs

39. Morrow seeks recovery of all reasonable and necessary attorney fees from Defendant Graycor incurred both through the trial and all appeals. Such fees are recoverable pursuant to paragraph 17 of the MSA between the parties, as well as Sections 37.009 and 38.001(8) of the Texas Civil Practice and Remedies Code.

# **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Morrow Energy, LLC prays that Defendant Graycor Industrial Constructors, Inc. be cited to appear and answer, and that upon final hearing, Morrow have judgment over and against the Defendant as follows:

- a. Declarations as follows:

    i. that Graycor agreed to accept Morrow's payment of $3.1 million, in return for providing a $500,000 credit to Morrow;

    ii. that Graycor reneged upon that agreement;

    iii. the Morrow is entitled to at least $900,000.00 in credits due to overcharges by Graycor;

    iv. that Graycor's "Invoice 21" was fraudulent, untimely, unsupported by proper back up documentation, and not payable;

    ix. that Invoice 20 submitted by Graycor was the final invoice properly payable by Morrow for the DTE project;

    x. that the total amount owed by Morrow to Graycor after consideration of all properly submitted and payable invoices and all credits for overcharges is no greater than $2.749 million;

    xi. that neither Morrow, nor its customer DTE, or its customer the City of Riverview owe any further sums, beyond the $2,748.580.42 owed to Graycor for work performed on the Project; and

    xii. that Morrow is entitled to its reasonable and necessary attorney's fees incurred in obtaining this relief and in accordance with the provisions of Section 17 of the MSA (Exhibit 1).

- b. Morrow recover its actual damages as a result of Graycor's breaches of the MSA between the parties in an amount to be determined by the trier of fact;

- c. Morrow recover its actual damages as a proximate result of Graycor's tortious interference in an amount to be determined by the trier of fact;

- d. Morrow recover its reasonable and necessary attorney's fees incurred in the prosecution of this action, plus a conditional award of additional attorneys' fees in the event this action is taken to the United States Court of Appeals for the Fifth Circuit, or subsequent appeal to the U.S. Supreme Court; and

      e.    all costs of suit incurred, including costs of audit, expert witness fees and expenses and pre- and post-judgment interest; and

Plaintiff Morrow Energy, LLC respectfully requests further that it have such other and further relief, both general and specific, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

**JOHNSON DELUCA KURISKY & GOULD**
A Professional Corporation

By: */s/ Millard A. Johnson*
    Millard A. Johnson
    TBN: 10772500
    mjohnson@jdkglaw.com
    Bradley L. DeLuca
    TBN: 05653800
    bdeluca@jdkglaw.com
    Alexander C. Fones
    TBN: 24116369
    afones@jdkglaw.com
    John F. Myers
    TBN: 24137648
    jmyers@jdkglaw.com
    4 Houston Center
    1221 Lamar, Suite 1000
    Houston, Texas 77010
    (713) 652-2525 – Telephone
    (713) 652-5130 – Fax

-AND-

**COTTON, BLEDSOE, TIGHE & DAWSON**
A Professional Corporation

    Bradley H. Bains
    TBN: 01553980
    bbains@cbtd.com
    500 West Illinois, Suite 300
    Midland, Texas 79701-4337
    (432) 684-5782 – Telephone

**ATTORNEYS FOR PLAINTIFF
MORROW ENERGY, LLC**

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on August 26, 2025, a true and correct copy of the above document was forwarded to all parties of record via ECF, Electronic Service, Certified Mail, Facsimile, Regular Mail and/or Hand Delivery:

Harper Estes
Lynch, Chappell & Alsup
300 N. Marienfeld St., Suite 700
Midland, TX 79701
hestes@lcalawfirm.com

Tina M. Bird
Adam C. Toosley
Thompson Coburn LLP
55 East Monroe Street, 37th Floor
Chicago, IL 60603
tbird@thompsoncoburn.com
atoosley@thompsoncoburn.com

***Attorneys for Defendant Graycor Industrial Constructors, Inc.***

                                                   */s/ Alexander C. Fones*
                                                   Alexander C. Fones